IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VIRGINIA ANDERS               :     CIVIL ACTION
                              :
        v.                    :
                              :
BUCKS COUNTY, ET AL.          :     NO. 13-5517

MEMORANDUM

McLaughlin, J.                                May 12, 2014

        This is a § 1983 action brought by a former inmate of
the Bucks County Correctional Facility alleging violations of
her Eighth Amendment rights by the defendants' deliberate
indifference to her serious medical needs.  The plaintiff brings
suit against Dr. David Davis, Nurse Robert Hitchon (improperly
named in the complaint Nurse Hutchins aka Hitchen, aka
Hutchinson), Warden Terrance P. Moore, and the County of Bucks
(named in the complaint as Bucks County).  The plaintiff alleges
that the defendants refused to provide blood sugar monitoring
and medication despite knowing that she suffered from type II
diabetes and required such treatment.  The plaintiff alleges §
1983 claims against Davis and Hitchon, a negligence claim
against Davis, a Monell claim against the County of Bucks and
Moore, a claim under the Americans with Disabilities Act against
the County of Bucks, and a claim for punitive damages against
Hitchon and Moore.

Before the Court are three motions to dismiss.  For the reasons discussed herein, the Court will grant in part and deny in part the motions to dismiss.

I.   <u>Facts Alleged in the Complaint</u>

The plaintiff, Virginia Anders, has suffered from type II diabetes for many years.  Her condition requires at least daily blood sugar monitoring and medication to control her diabetic symptoms.  On or about July 7, 2011, Ms. Anders was incarcerated at the Bucks County Correctional Facility.  Shortly after she became incarcerated, Ms. Anders was examined by medical personnel, including Dr. David Davis, at the Bucks County Correctional Facility.  During that examination, Ms. Anders informed Dr. Davis and other medical personnel that she suffered from type II diabetes and that she required medication. Compl. ¶¶ 14-17.

On July 7, 2011, Dr. Davis ordered twice daily blood sugar monitoring and a daily dose of 500 mg of Glucophage. Between July 8 and July 11, 2011, Ms. Anders was given medication, but her blood sugar was not monitored.  On July 11, 2011, both the medication and blood sugar monitoring were discontinued by Dr. Davis.  Compl. ¶¶ 18-20.

After the administration of medication and monitoring had ceased, and at unspecified times between July 7, 2011 and

September 23, 2011, Ms. Anders informed defendant Nurse Robert Hitchon, and other unidentified officers or medical personnel, that she needed her blood sugar checked daily and that she needed medication.  Ms. Anders was informed that she had to put her information on a special request form and wait to get an appointment.  On August 21, 2011, Ms. Anders requested blood glucose monitoring, medications, and care for her diabetic condition.  Compl. ¶¶ 20-22, 30.

From August 21, 2011 through September 23, 2011, Ms. Anders "suffered the effects of elevated and/or uncontrolled blood glucose" and was not given a diabetic diet.  On September 22, 2011, Ms. Anders began to experience severe symptoms of uncontrolled diabetes.  Ms. Anders was examined by Dr. Davis on the morning of September 23, 2011.  During that examination, Dr. Davis examined Ms. Anders's ear, but did not check her blood sugar.  Compl. ¶¶ 23-25.

In the evening of September 23, 2011, Ms. Anders experienced convulsions, seizures and worsening of her vision, and was discovered unresponsive in her cell.  Ms. Anders was transported to Doylestown Hospital for medical treatment, where she remained until September 26, 2011 in order to treat the complications caused by her uncontrolled diabetes.  Compl. ¶¶ 26-28.

II.  Legal Standard

A motion to dismiss filed pursuant to Rule 12(b)(6) tests the sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45 (1957), abrogated in other respects by Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  A claim may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted."

Although Rule 8 requires only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)(2) and Conley, 355 U.S. at 47).  Similarly, naked assertions devoid of further factual enhancement will not suffice.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 557).

Although "conclusory" or "bare-bones" allegations will not survive a motion to dismiss, Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  The

4

Court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion.  First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted.  *Fowler*, 578 F.3d at 210.  Any facts pleaded must be taken as true, and any legal conclusions asserted may be disregarded.  *Id.* at 210-11.  Second, the Court must determine whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief."  *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

This two-part analysis is "context-specific" and requires the Court to draw on "its judicial experience and common sense" to determine if the facts pleaded in the complaint have "nudged [the plaintiff's] claims" from "conceivable to plausible."  *Iqbal*, 556 U.S. at 679-80.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.

The Third Circuit has summarized the post-*Twombly* standard as follows: "'[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that

discovery will reveal evidence of' the necessary element."
Phillips, 515 F.3d at 234 (citations omitted) (quoting Twombly, 550 U.S. at 556).

III. Analysis

The defendants argue that all of the plaintiff's claims are barred by the statute of limitations.  They also argue that the plaintiff fails to state a claim for a violation of the Americans with Disabilities Act ("ADA"), § 1983, and Monell.  They also argue that she has not pleaded a claim for punitive damages.  Defendant Hitchon and Moore also argue that they are entitled to qualified immunity.

The Court can conclude that the plaintiff's claims against Dr. Davis based on his initial failure to provide blood sugar monitoring in July 2011 and his initial discontinuance of blood sugar monitoring and medication are barred by the statute of limitations, and will dismiss the plaintiff's claims to the extent they are based on those actions which occurred in July 2011.  The Court cannot determine at this point whether any of the plaintiff's other claims are time-barred.  The Court will also dismiss the plaintiff's ADA and Monell claims, as well as the plaintiff's claim for punitive damages against Moore.  The Court will otherwise deny the motions.

6

A.   <u>Americans with Disabilities Act</u>

The plaintiff has conceded that her claims under the ADA should be dismissed.  Pl.'s Resp. to Bucks County Mot. at 10.  The Court will therefore dismiss Count VI of the plaintiff's complaint.

B.   <u>Statute of Limitations</u>

The Court may only rule on a statute of limitations defense in the context of a 12(b)(6) motion if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations period."  <u>Robinson v. Johnson</u>, 313 F.3d 128, 135 (3d Cir. 2002) (quoting <u>Hanna v. U.S. Veterans' Admin. Hosp.</u>, 514 F.2d 1092, 1094 (3d Cir. 1975).  However, "[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)."  <u>Id.</u> (quoting <u>Bethel v. Jendoco Constr. Corp</u>, 570 F.2d 1168, 1174 (3d Cir. 1978).

The defendants have all argued that the plaintiff's § 1983, negligence,[1] and <u>Monell</u> claims are barred in whole or in part by the statute of limitations.  The plaintiff's § 1983 claims for individual and municipal liability and the

---

[1] Although defendant Davis's statute of limitations argument in his motion to dismiss is focused on the plaintiff's § 1983 claim, it appears that he also intends for his arguments to apply to the plaintiff's negligence claims.

plaintiff's negligence claims are governed by the same two-year statute of limitations.  See Sameric Corp. of Delaware v. City of Philadelphia, 142 F.3d 582, 599 (1998); 42 Pa. C.S.A. § 5524(7).  The plaintiff filed the complaint with this court on September 20, 2013.  Thus, any claims that accrued before September 20, 2011 are barred by the statute of limitations, unless some tolling principle applies.

The defendants argue that the plaintiff's claims all accrued by August 21, 2011, at the latest.  The plaintiff argues that her § 1983 claim did not actually accrue until September 22, 2011, when she suffered sufficient harm to establish deliberate indifference.[2]  Alternatively, the plaintiff argues that the "continuing violation" doctrine applies to toll her civil rights claims.  These two arguments go hand-in-hand, as the continuing violations doctrine only applies if the plaintiff's claims did not actually "accrue" prior to September 20, 2011.

A § 1983 claim accrues "when the plaintiff has 'a complete and present cause of action,'" or in other words, "'when the wrongful act or omission results in damages.'" Dique v. New Jersey State Police, 603 F.3d 181, 185-86 (3d Cir.

---

[2] The plaintiff does not specifically address when her Monell claim and negligence claim accrued.  The Court will assume that the plaintiff also argues that her Monell and negligence claims did not accrue until September 22, 2011.

2010) (quoting Wallace v. Kato, 549 U.S. 384, 388, 391 (2007)).
Similarly, the statute of limitations for a negligence claim
under Pennsylvania law "begins to run as soon as the right to
institute and maintain a suit arises . . . ." Montanya v.
McGonegal, 757 A.2d 947, 950 (Pa. Super. Ct. 2000) (quoting
Hubert v. Greenwald, 743 A.2d 977, 981 (Pa. Super. Ct. 1999).
Pennsylvania's discovery rule applies to both the plaintiff's
§ 1983 and negligence claim, which tolls the statute of
limitations until "the plaintiff knows, or reasonably should
know, (1) that [the plaintiff] has been injured, and (2) that
[his or her] injury has been caused by another party's conduct."
Bohus v. Beloff, 950 F.2d 919, 924 (3d Cir. 1991) (quoting
Cathcart v. Keene Indus. Insulation, 471 A.2d 493, (Pa. Super.
Ct. 1984)).

     The continuing violation doctrine is an "equitable
exception to the timely filing requirement."[3]  West v.

---

[3] The defendants argue that that the Third Circuit has
refused to apply the continuing violations doctrine in § 1983
claims for deliberate indifference to serious medical needs.
However, the Third Circuit has recognized that, although the
continuing violations doctrine applies most frequently in
employment discrimination claims, "this has not precluded the
application of the doctrine to other contexts." Cowell, 263
F.3d at 292.  Furthermore, the Third Circuit has analyzed the
continuing violations doctrine in the context of § 1983 claims,
including inmate claims. See O'Connor v. City of Newark, 440
F.3d 125, 128-29 (3d Cir. 2006) (applying the continuing
violations doctrine to a § 1983 claim and finding that the
statute of limitations was not tolled under the circumstances of
that case); Cowell v. Palmer Twp., 263 F.3d 286, 292-96 (3d Cir.

Philadelphia Elec. Co., 45 F.3d 744, 765 (3d Cir. 1995),
abrogated on other grounds in Mandel v. M & Q Packaging Corp.,
706 F.3d 157 (3d Cir. 2013).  "[W]hen a defendant's conduct is
part of a continuing practice, an action is timely so long as
the last act evidencing the continuing practice falls within the
limitations period; in such an instance, the court will grant
relief for the earlier related acts that would otherwise be time
barred."  Brenner v. Local 514, United Bhd. of Carpenters &
Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991).

        The Third Circuit has held that "in order to benefit
from the doctrine, a plaintiff must establish that the
defendant's conduct is 'more than the occurrence of isolated or
sporadic acts.'"  Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d
Cir. 2001) (quoting West, 45 F.3d at 755).  The Court must
consider carefully the distinction between "continuing
violations" and "discrete acts."  See O'Connor v. City of
Newark, 440 F.3d 125, 128 (3d Cir. 2006).  If the plaintiff's
claims are based on discrete acts which give rise to causes of
action that can be brought individually, then the continuing

---

2001) (same); Spencer v. Courtier, 2014 WL 114850, at *1 (3d
Cir. Jan. 14, 2014) (same).  District courts in this circuit
have also analyzed the continuing violations doctrine in the
context of inmate actions filed under § 1983.  See, e.g., Runkle
v. Pennsylvania Dep't of Corr., 13-137, 2013 WL 6485344, at *4
(W.D. Pa. Dec. 10, 2013); Williams v. Beard, 08-0044, 2011 WL
1343141 (M.D. Pa. Mar. 30, 2011), aff'd sub nom. Williams v.
Sec'y Pennsylvania Dep't of Corr., 541 F. App'x 246 (3d Cir.
2013).

violations doctrine does not serve to extend the applicable statute of limitations periods.  Id. at 128-29; see also Mandel, 706 F.3d at 165.  "[T]ime-barred claims cannot be resurrected by being aggregated and labeled continuing violations."  O'Connor, 44 F.3d at 129.

The continuing violations doctrine applies when the acts of the defendant are not individually actionable, but only the cumulative effect of those acts creates a cause of action.[4] Applying the doctrine to a § 1983 claim, the Third Circuit explained that the Supreme Court:

> established a bright-line distinction between discrete acts, which are individually actionable, and acts which are not individually actionable but may be aggregated to make out a . . . claim.  The former must be raised within the applicable limitations period or they will not support a lawsuit.  The latter can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.

O'Connor, 440 F.3d at 127 (citing National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 105, 113 (2002).

---

[4] "It is thus a doctrine not about a continuing, but about a cumulative, violation.  A typical case is workplace harassment on grounds of sex.  The first instance of a coworker's offensive words or actions may be too trivial to count as an actionable harassment, but if they continue they may eventually reach that level and then the entire series is actionable.  If each harassing act had to be considered in isolation, there would be no claim even when by virtue of the cumulative effect of the acts it was plain that the plaintiff had suffered actionable harassment."  3 Sheldon H. Nahmod, Civil Rights & Civil Liberties Litigation: The Law of Section 1983 § 9:31 (2013).

The plaintiff's § 1983 claims appear to consist of the aggregation of the following actions: (1) the defendants' failure to monitor the plaintiff's blood sugar from July 7 through September 23, 2011; (2) Dr. Davis's discontinuance of the plaintiff's medication and blood sugar monitoring on July 11, 2011; (3) the defendants' failure to provide the plaintiff with medication and blood sugar monitoring from July 11, 2011 through September 23, 2011; (4) the failure of Nurse Hitchon and others to respond, their delay in responding to, or their denial of the plaintiff's verbal requests for medication and blood sugar monitoring; (5) the defendants' failure to respond to or denial of the plaintiff's written request of August 21, 2011; and (6) Dr. Davis's inadequate examination of the plaintiff on September 23, 2011.

The plaintiff filed her complaint on September 20, 2013.  The Court concludes that any of the plaintiff's claims based on conduct that occurred on or after September 20, 2011 are timely.  The plaintiff's claims that accrued prior to September 20, 2011 are barred by the statute of limitations. The Court cannot determine from the face of the complaint, however, when all of the plaintiff's claims accrued.

It is clear from the face of the complaint that the plaintiff knew, prior to September 20, 2011, of her injury and its cause with respect to Dr. Davis's discontinuance of her

12

medication and blood sugar monitoring[5] and the defendants'
failure to provide medication and monitoring beginning in July
2011.[6]  To the extent the plaintiff seeks relief for those
violations, those claims are time-barred.[7]  See Reigle v. Reish,

---

[5] Dr. Davis's discontinuance of the plaintiff's medication
and blood sugar monitoring on July 11, 2011 could constitute an
Eighth Amendment cause of action, on its own, for deliberate
indifference to a serious medical need.  According to the facts
alleged in the complaint, Dr. Davis knew at that time of the
plaintiff's need for medical care and intentionally refused to
provide it.  This action, therefore, could constitute a cause of
action independent from any later acts of Dr. Davis, or any
subsequent effect on the plaintiff.  The accrual of this cause
of action is therefore not tolled by the continuing violations
doctrine until September 22, 2011, as the plaintiff argues.  The
continuing violations doctrine "will not stop the ticking of the
limitations clock . . . [once] plaintiff obtained requisite
information [to state a claim.]  On discovering an injury and
its cause, a claimant must choose to sue or forego that remedy."
Barnes v. Am. Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998)
(quoting Kichline v. Consolidated Rail Corp., 800 F.2d 356, 360
(3d Cir. 1986).

[6] Similar to Dr. Davis's discontinuance of the plaintiff's
treatment, the plaintiff had a cause of action for the
defendants' failure to treat her diabetic condition, which is
not dependent on any actions that were taken after September 20,
2011.  The plaintiff was aware at least by August 21, 2011 that
she needed medication and blood sugar monitoring and that she
was or could be harmed by the defendants' failure to provide
such treatment.  The plaintiff was not required to wait until
she suffered the seizures and convulsions on September 23, 2011
before she had a claim.

[7] The Court is not convinced by the plaintiff's argument
that her claims did not accrue until September 22, 2011 because
it was not until then that she suffered sufficient harm to
establish a claim for deliberate indifference to a serious
medical need.  "Where prison authorities deny reasonable
requests for medical treatment . . . and such denial exposes the
inmate to undue suffering or the threat of tangible residual
injury, deliberate indifference is manifest.  Similarly, where
knowledge of the need for medical care is accompanied by the
intentional refusal to provide that care, the deliberate

11-0052, 2011 WL 4625644, at *7 (M.D. Pa. Sep. 30, 2011) (finding, in a § 1983 case involving failure to medicate and treat a prisoner's condition that was known to the defendants, that the plaintiff's claim accrued when he knew of his condition and his need to be on certain medications, was aware of the consequences of not receiving them, and experienced symptoms of withdrawal).  Because the complaint alleges other conduct by Dr. Davis within the two years prior to the filing of the complaint, Dr. Davis is not dismissed from this action entirely.[8]

It is not clear from the complaint at what point the plaintiff's claims accrued with respect to Nurse Hitchon's denials of her requests for medical care and with respect to the plaintiff's August 21, 2011 written request for medical care.[9]

_____

indifference standard has been met." Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (internal quotation marks and citations omitted).

[8] Namely, the plaintiff's § 1983 and negligence claims against Dr. Davis regarding his inadequate examination on September 22, 2011 are not time-barred.  The parties also have not addressed whether the plaintiff has a claim for Dr. Davis's failure to provide medication and monitoring on September 20-23, 2011.

[9] Because deliberate indifference is manifest when "prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate to undue suffering or the threat of tangible residual injury," Lanzaro, 834 F.2d at 346-47, the plaintiff has a cause of action for each time her requests for medical care were denied.  See Runkle, 2013 WL 6485344, at *5 ("Here, each time Plaintiff was denied treatment for Hepatitis C he had a cause of action available to him . . . . The fact that Plaintiff was repeatedly denied treatment does not aggregate those discrete acts into a continuing violation.")

14

The complaint states that the plaintiff informed correctional officers and medical personnel, including Nurse Hitchon, that she needed her blood sugar to be checked daily and that she needed medication daily.  Although the complaint states that the plaintiff was informed, in response, that she needed to put her request on a special request form, the complaint does not specify the dates on which these verbal requests and denials were made.  Also, the complaint does not indicate when the plaintiff's August 21, 2011 written request was denied, or whether it was responded to at all.  The Court therefore cannot determine at this point whether her claims based on the defendants' denial of her requests for medical care were barred by the statute of limitations.

For the same reasons that the Court cannot conclude that the plaintiff's claims against the individual defendants are barred by the statute of limitations, the Court is unable to determine whether the plaintiff's Monell claim is barred by the statute of limitations.  See Leonard v. City of Pittsburgh, 13-455, 2013 WL 4541727 (W.D. Pa. Aug. 27, 2013) (concluding that the plaintiff's Monell claim accrued at the same time her claims accrued against the individual defendants whose conduct violated her constitutional rights).

---

(citing Hunt v. Pa. Dept. of Corrections, 289 Fed. App'x 507, 509 (3d Cir. 2008)).

C.   Eighth Amendment Deliberate Indifference Claims

Defendants Davis and Hitchon also argue that the plaintiff has failed to state a claim against them for deliberate indifference to a serious medical need under § 1983. "To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or the laws of the United States committed by a person acting under the color of state law."[10]   Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 580-81 (3d Cir. 2003).   To state a claim for an Eighth Amendment violation based on inadequate medical care, an inmate must allege that (1) the defendant was deliberately indifferent (2) to the plaintiff's serious medical needs.   Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).

Deliberate indifference can exist in a variety of circumstances.   The Third Circuit has specifically noted that a claim for deliberate indifference exists where: (1) "prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate to undue suffering or the threat of tangible residual injury," (2) "knowledge of the need for medical care is accompanied by the intentional refusal to provide that care," (3) "[s]hort of absolute denial, if

---

[10] The defendants do not argue that they were not acting under the color of law.

necessary medical treatment is delayed for non-medical reasons," and (4) "prison officials erect arbitrary and burdensome procedures that result in interminable delays and outright denials of medical care to suffering inmates." Id. at 346-47 (internal quotation marks and citations omitted).  The alleged violation must rise above mere negligence or medical malpractice.  Estelle v. Gamble, 429 U.S. 97, 106 (1976).

A medical need is serious if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Lanzaro, 834 F.2d at 347 (internal quotation marks and citation omitted).  The defendants do not argue that the plaintiff did not have a serious medical need.

Nurse Hitchon argues that he cannot be held liable under § 1983 because he does not have a medical license and he was unable to provide the care requested by the plaintiff without a physician's order.  Similarly, Hitchon argues that he is entitled to qualified immunity because he followed the orders entered by Dr. Davis.  The Court cannot dismiss the plaintiff's claims against Hitchon based on these arguments.  The complaint contains no information regarding Nurse Hitchon's qualifications, authority to provide treatment, or any allegations regarding whether or not Hitchon was following or

17

disobeying orders of a physician.  These arguments are more properly raised on summary judgment.

Dr. Davis argues that the plaintiff has failed to state a claim for deliberate indifference against him because his failure to perform a blood sugar test on September 23, 2011 amounts to no more than medical malpractice.  The plaintiff has alleged that she suffered from a serious medical condition, that Dr. Davis was aware of her serious medical need, and that Dr. Davis intentionally refused to provide treatment for that need, even when the plaintiff was exhibiting symptoms of uncontrolled diabetes.  The Court concludes that these allegations are sufficient to withstand a motion to dismiss.

D.   Municipal Liability

The plaintiff asserts a claim against the County of Bucks and Warden Moore for municipal liability.  A municipality cannot be held liable under § 1983 for the actions of its employees on a respondeat superior theory.  Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  When a municipal entity is sued under § 1983, "the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted

by custom." Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (citing Monell, 436 U.S. 658).

There also must be a "'direct causal link between a municipal policy or custom and the alleged constitutional deprivation' to ground municipal liability." Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 249-50 (3d Cir. 2007) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)). The Third Circuit has directed that a complaint alleging a Monell claim "must identify a custom or policy, and specify what exactly that custom or policy was." McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009) (citing Phillips, 515 F.3d at 232).

A plaintiff can demonstrate the existence of a policy by showing that a decisionmaker possessing final authority to establish an entity's policy with respect to the action issues an official proclamation, policy, or edict. Mulholland v. Gov't Cnty. of Berks, 706 F.3d 227, 237 (3d Cir. 2013). A course of conduct is considered to be a custom when, although not authorized by law, officials' practices are so permanent and well-settled as to virtually constitute law. Id.

The Third Circuit has explained that there are three situations in which acts of an employee may be deemed to be the result of a policy or custom of the municipal entity for which he works: (1) the appropriate officer or entity promulgates an applicable policy statement and the act complained of is an

19

implementation of that policy; (2) without a formally announced policy, federal law is violated by an act of the policymaker; or (3) "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" Natale, 318 F.3d at 584 (alteration in original) (quoting City of Canton, 489 U.S. at 390).

The plaintiff's complaint alleges that the County of Bucks and Warden Moore failed to investigate and discipline incidents of deliberate indifference to serious medical needs of inmates; had no system or an inadequate system of review of the medical care of inmates and failed to discipline, train, or supervise staff who were deliberately indifferent to inmates' medical needs; maintained an inadequate system of training related to the law of deliberate indifference to inmates' serious medical needs; failed to promulgate a policy for the treatment of serious medical needs of inmates which does not violate state and federal laws; and established a system which fails to identify and track instances of improper denial of medical care. The complaint also alleges that due to the lack of supervision, discipline and training, staff members believed

that the denial of medical care without just cause was a proper practice.  Compl. ¶¶ 51-60.

The defendants argue that the plaintiff's Monell claim should be dismissed because the plaintiff fails to satisfy the Iqbal/Twombly pleading standards, and that Warden Moore is entitled to qualified immunity.  The Court agrees with the defendants that the plaintiff's allegations are insufficient to state a claim against the County of Bucks and Warden Moore for liability under Monell.

The plaintiff's allegations consist of pure legal conclusions, which are not supported by any factual allegations that would raise her allegations "above the speculative level." Phillips, 515 F.3d at 231-32 (quoting Twombly, 127 S.Ct. at 1965 n.3).  The plaintiff has not alleged any pattern of incidents necessary to establish the official custom, failure to train, or municipal inaction theories of liability.  See Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011) ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train."); Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998) ("[A] failure to train, discipline or control can only form the basis for Section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar

incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate.").

Nor has the plaintiff pleaded sufficient facts to bring her claim within the narrow category of single-incident liability.  City of Canton, 489 U.S. at 390 ("[I]n light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to that need."); Connick, 131 S. Ct. at 1362-63 ("A licensed attorney making legal judgments, in his capacity as a prosecutor, about Brady material simply does not present the same 'highly predictable' constitutional danger as Canton's untrained officer.").

Furthermore, the complaint does not allege how the failures of the municipal defendants to train, supervise, and discipline corrections officers and staff for deliberate indifference to inmates' medical needs directly and proximately caused the plaintiff's injuries, such that the Court could reasonably infer that the policy or custom was the "moving force behind the constitutional violation."  City of Canton, 489 U.S. at 389 (quoting Monell, 436 U.S. at 694).

22

To the extent the plaintiff is alleging a claim against Warden Moore for supervisory liability, the plaintiff fails to state a claim for the same reasons that the plaintiff failed to state a claim for municipal liability.  Accordingly, the plaintiff's claims under Monell will be dismissed without prejudice.  The Court will permit the plaintiff to amend the complaint with respect to this claim.

E.   Punitive Damages Claims

The plaintiff's complaint asserts punitive damages claims against defendants "Moore, Hutchins, Doe and Roe".  The complaint does not indicate that the plaintiff's punitive damages claim is alleged against Dr. Davis.[11]  The plaintiff has conceded that her punitive damages claim against Moore should be dismissed.  To the extent the punitive damages claims could be construed to be alleged against the County of Bucks, the plaintiff also agrees that such claims should be dismissed.  The remaining issue is whether the plaintiff has adequately pleaded a claim for punitive damages against defendant Hitchon. "Punitive damages in § 1983 cases are available where the defendants have acted with a 'reckless or callous disregard of, or indifference to, the rights and safety of others.'"  Keenan

---

[11] The motion to dismiss filed by Dr. Davis and the plaintiff's response both address a punitive damages claim against Dr. Davis.  The complaint does not allege a punitive damages claim against Dr. Davis, however.

v. City of Philadelphia, 983 F.2d 459, 469-70 (3d Cir. 1992)

(quoting Bennis v. Gable, 823 F.2d 723, 734 (3d Cir. 1987).

Because the Court has concluded that the plaintiff has stated a

claim against Hitchon for deliberate indifference to her serious

medical needs, the plaintiff's punitive damages claim as to

defendant Hitchon will not be dismissed.

     An appropriate order shall issue separately.